FILED

JAN 18 2024

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR CRIMINAL COMPLAINT

### INTRODUCTION

I, Sara Shalowitz, being first duly sworn state:

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") assigned to the FBI's Norfolk Field Office in Chesapeake, Virginia. I have been employed by the FBI since 2017 and currently investigate national security matters. Prior to joining the FBI, I was a Special Agent with the U.S. Department of Labor – Office of Inspector General, Office of Labor Racketeering and Fraud Investigations since 2010. I have completed training in criminal investigations at the FBI Academy, the Federal Law Enforcement Training Center, and the Department of Justice National Advocacy Center. Additionally, I have a Master of Arts degree in Criminology from The George Washington University in Washington, DC.

2. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States. In the course of my employment as a sworn law enforcement officer, I have participated in the execution of numerous search warrants resulting in the seizure of computers, magnetic storage media for computers, cellular devices, electronic media, and other items evidencing violations of state and federal laws.

3. This affidavit supports an application for a criminal complaint charging **FENGYUN SHI**, with the Prohibited Operation of Unregistered Unmanned Aircraft System ("UAS") in Violation of National Defense Airspace, in violation of Title 49, United States Code, Sections 46306 & 46307; and Photographing Defense Installations and Use of Aircraft for Photographing the Same, in violation of Title 18, United States Code, Sections 795 & 796.

1

4. This affidavit is based upon information that I have gained from my investigation, my training and experience, as well as information gained from conversations with other law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that **FENGYUN SHI**, has committed a violation of Title 49, United States Code, Sections 46306 & 46307 and Title 18, United States Code, Sections 795 & 796.

## STATUTORY AND LEGAL AUTHORITY

5. This investigation concerns alleged violations of Title 49, United States Code, Sections 46306 & 46307 and Title 18, United States Code, Sections 795 & 796.

6. The FAA is an agency within the U.S. Department of Transportation, which is part of the executive branch of the United States government. The FAA is the primary agency of the United States government responsible for overseeing civilian aviation. The responsibilities of the FAA include monitoring and enforcing compliance with regulations governing civil aviation, in particular those found in Titles 14 and 49 of the United States Code of Federal Regulations ("CFR").

7. The FAA is responsible for the control and use of navigable airspace by aircraft (both manned and unmanned) within the United States. An unmanned aircraft, commonly referred to as a drone, is defined by the FAA as "an aircraft that is operated without the possibility of direct human intervention from within or on the aircraft." 14 C.F.R. § 107.3. A "small unmanned aircraft" is defined as "an unmanned aircraft weighing less than 55 pounds on takeoff, including everything that is on board or otherwise attached to the aircraft. A small unmanned aircraft and its associated

2

elements (including communication links and the components that control the small unmanned aircraft) that are required for the safe and efficient operation of the small unmanned aircraft in the national airspace system."

8.     The FAA created the National Airspace System ("NAS") to protect persons and property on the ground and to establish a safe and efficient airspace for civil, commercial, and military aviation to ensure the safe and efficient operation of the NAS, the FAA requires that UAS meeting certain criteria and operating parameters be registered with the FAA. The FAA also requires that UAS operators wishing to fly UAS in certain kinds of airspace obtain an FAA Remote Pilot Certificate (also known as a Part 107 operator certificate). An FAA Remote Pilot Certificate is also required to operate UAS meeting certain criteria, regardless of airspace classification.

### FAA UAS Registration and Pilot Certificate Requirements

9.     49 U.S.C. §§ 46306 (b)(5)(A) and (b)(6)(A) criminalize the knowing and willful operation, attempted operation, or allowing another person to operate an unregistered UAS, when that UAS is required to be registered with the FAA. 49 U.S.C. § 46306(b)(7) criminalizes the knowing and willful operation of a UAS without an airman's certificate that authorizes the individual to serve in that capacity, when possessing such an airman certificate is required.

10.    To lawfully operate a UAS within the NAS, the UAS must be registered with the FAA. 14 C.F.R. §§ 107.13, 91.203(a)(2). However, a UAS weighing less than 0.55 pounds (or 250 grams) does not have to be registered if the operator complies with all requirements for Recreational Flyers found in 49 U.S.C. § 44809. The following is a list of the relevant requirements: 1) the aircraft is flown strictly for recreational purposes; 2) the aircraft is operated in accordance with or within the programming of a community-based organization's set of safety

guidelines that are developed in coordination with the Federal Aviation Administration; 3) the aircraft is flown within the visual line of sight of the person operating the aircraft or a visual observer co-located and in direct communication with the operator; 4) the aircraft is operated in a manner that does not interfere with and gives way to any manned aircraft; 5) in Class B, Class C, or Class D airspace ... the operator obtains prior authorization from the Administrator or designee before operating and complies with all airspace restrictions and prohibitions; 6) the operator has passed an aeronautical knowledge and safety test ... and maintains proof of test passage to be made available to ... law enforcement upon request; and 7) the aircraft is operated in a manner that does not endanger the safety of the national airspace system.

National Defense Airspace Restrictions

11. Title 49 U.S.C. § 4307 criminalizes the knowing or willful violation of restricted airspace as governed by Title 49 U.S.C. § 40103(b)(3). Section 40103 grants the U.S. Government exclusive sovereignty over U.S. airspace and subsection (b) (3) directs the FAA, in consultation with the Secretary of Defense, to establish security provisions for civilian use of navigable airspace consistent with national security. Section 40103(b)(3)(B) provides that security provisions restricting or prohibiting civil aircraft may be issued by regulation or order. 14 CFR 99.7 requires "each person operating an aircraft in [a Defense Area] must...comply with special security instructions issued by the [FAA] in the interest of national security, pursuant to agreement between the FAA and the Department of Defense..." The special security instructions that defines National Defense Airspace is Notice to Air Mission ("NOTAM") 3/6405, which was issued May 15, 2023. Pursuant to NOTAM 3/6405:

> All unmanned aircraft are prohibited from flying within a standoff distance of 3000ft laterally and 1000ft above any U.S. Navy (USN) vessel operating,

transiting, or at port within the territorial waters and/or navigable waters of the USA.

12. As a result of NOTAM 3/6405, U.S. Navy vessels are subject to a large protective "bubble" that protects them from unmanned aircraft intrusions up to 3,000 feet laterally and 1,000 feet above the vessel.

### Civil Airspace Restrictions

13. Airspace is either controlled or uncontrolled. The FAA classifies controlled airspace as Class A through Class E, depending on the complexity or density of aircraft movements, the nature of the operations conducted within the airspace, the level of safety required to operate in the airspace, and the national and public interest. Class G is uncontrolled airspace. Class B airspace is that airspace surrounding the nation's busiest airports.

14. 14 C.F.R 107.41 controls operation of UASs in certain civilian airspace. Specifically, 107.41 provides no person may operate a small-unmanned aircraft in Class B airspace "unless that person has prior authorization from Air Traffic Control." Air Traffic Control, which is typically located in an airport Tower, can be reached electronically through an FAA approved automated application process. Air Traffic Control is required by law to maintain a log of UAS approvals.

### Prohibited Conduct Under the Espionage Act

15. Title 18, United States Code, Sections 795 & 796, are part of the Espionage Act, 18 U.S.C. § 792 *et seq.*, and prohibit (among other things) taking pictures of companies that manufacture classified military equipment.

16. More specifically, 18 U.S.C. § 795 (i) authorizes the President of the United States to define certain vital military and naval installations or equipment as requiring protection against

5

the general dissemination of information relative thereto and (ii) prohibits, in the interest of national defense, the making of any photograph, sketch, picture, drawing, map or graphical representation of such vital military or naval installations or equipment without first obtaining requisite permissions (e.g., from the commanding officer of the military or naval post.

17. Section 796 prohibits an individual from using an aircraft or any contrivance used, or designed for navigation or flight in the air, for the purpose of making a photograph, sketch, picture, drawing, map, or graphical representation of vital military or naval installations or equipment.

18. In Executive Order 10104, then-President Truman-in the interests of the national defense-identified vital military and naval installations and equipment requiring the protection afforded by 18 U.S.C. §§ 795 & 796. Among other vital installations and equipment, the Executive Order specifies that "[a]ny commercial establishment engaged in the development or manufacture of classified military or naval arms, munitions, equipment, designs, ships, aircraft, or vessels for the United States Army, Navy or Air Force," falls under the protection afforded by 18 U.S.C. §§ 795 & 796. *See* Executive Order 10104. The Executive Order also specifies that "[a]ny military, naval, or air-force reservation, post, arsenal, proving ground, range, mine field, camp, base, airfield, fort, yard, station, district, or area" classified as "top secret, secret, confidential, or restricted" falls under the protection afforded by 18 U.S.C. §§ 795 & 796. *See* Executive Order 10104.

19. Both 18 U.S.C. §§ 795 and 796 are criminal offenses punishable by up to one year imprisonment.

## FACTS AND CIRCUMSTANCES

20. On January 6, 2024, at approximately 1222 hours, a Naval Criminal Investigative Service (NCIS) Special Agent (hereinafter the "SA") received information from a source at Huntington Ingalls's Industries ("HII") that a Chinese Foreign Student Visa holder was operating a drone outside the 65th Street and Huntington Avenue entrance, when it became stuck in a local residence's tree. As background, HII is the only U.S. manufacture of Navy carriers and manufactures and houses the Navy's submarines. The drone operator, Fengyun **SHI** (1010 Jefferson Commons Circle, Unit, XXXX, Saint Paul MN, DOB: XX/XX/1998, driving rental car Georgia License plate # CVF5476), left the drone in the tree, and Newport New Police Department ("NNPD") responded and provided aforementioned information to the HII security source. A data base check on **SHI** showed **SHI**, Fengyun, FI Visa; Academic or Language Student; DOB: XX/XX/1998; Advanced Passenger Record; 07/09/2023; A392-CBP-Chicago, O'Hare Airport, Departure Location Tokyo, Japan, Chinese Passport # E7124XXXX; F1 Academic or Language Student; initial entry on 8-11-2021, most recent 7-9-2023.

21. On January 8, 2024, the SA responded to the Huntington Avenue residence and interviewed the residence owner ("RESIDENT"), who recovered the drone on his property. RESIDENT advised on the morning of January 6, 2024, at approximately 10:30 hours, he exited his residence to go to the store, when he encountered his neighbor across the street talking to a male subject. RESIDENT said the male subject, later identified as Fengyun **SHI**, walked across the street and stated he needed help, and pointed to a tree on RESIDENT's property advising his drone was stuck. RESIDENT asked **SHI** where he was prior to locating the drone on his property, and **SHI** motioned up the street and then showed RESIDENT his iPhone and stated GPS brought

7

him to RESIDENT's address on Huntington Avenue. RESIDENT asked **SHI** where he was operating the drone and **SHI** motioned 50 yards across the street to the Newport News Shipyard. RESIDENT asked **SHI** where he was from, which **SHI** replied "China". RESIDENT asked if **SHI** "was a Chinese National," which **SHI** replied yes, and then motioned to his University of Minnesota sweatshirt and stated he was a student on break vacationing in the area. RESIDENT asked **SHI** about his Tesla vehicle, and **SHI** stated it was a rental car he picked up at the airport. At this time, RESIDENT stated he took pictures of **SHI**, his ID and the license plate of the vehicle and called NNPD. RESIDENT relayed the foregoing information to NNPD when officers arrived. RESIDENT gave NNPD a basic summary of the events and then left the scene. RESIDENT later reported on January 7, 2024, the drone fell out of the tree into his yard, due to wind, so he placed it into his shed for law enforcement. NNPD did not file a police report due to the drone being stuck in the tree at the time but did provide NCIS body CAM footage of the interaction with **SHI**.

22. On January 11, 2024, the SA reviewed the NNPD body cam footage that showed **SHI** interacting with responding NNPD officers. Officers asked **SHI** what assitance he needed, for which **SHI** replied his drone was stuck in a tree. NNPD officers asked why **SHI** was flying the drone in that area and that the weather was too dangerous to fly a drone. **SHI** appeared very nervous in the video and did not have any real reasons for why he was flying the drone during inclement weather. NNPD asked **SHI** if he knew he was flying the drone in restricted air space. **SHI** presented what appeared to be an iPhone, connected to the drone, and said he thought he could fly the drone in the residential area. **SHI** became nervous and cradled the cell phone towards his body, and stated he just needed help getting it out of the tree. NNPD officers asked **SHI** what he was

doing in the area. **SHI** reported he flew in the day prior on Juanary 5, 2024, rented a vehicle on vacation/leave from school, and took a tour of the Elizabeth Waterway. NNPD provided him a number to the Fire Department non-emergency line, advising he would need to contact them, and stay on the scene. **SHI** returned the rental vehicle approxmiately one hour after this law enforcement interaction, and left Hampton Roads, VA.

23. The drone and its SD card were turned over to NCIS on January 8, 2024, by RESIDENT. The FBI seized the drone and its SD card pursuant to a search warrant issued in the EDVA on January 12, 2024. 4:24-sw-4 and 4:24-sw-5.

24. Pursuant to a search warrant issued in the Eastern District of Virginia, 4:24-sw-5, the SD card retrieved from the drone, itself subject to search warrant 4:24-sw-4, contained photos and videos appearing to capture U.S. Naval vessels and/or vessels intended for use by the U.S. Navy that are drydocked at either of two defense contractors, Newport News Shipbuilding ("NNSB") in Newport News, Virginia and/or BAE Systems shipbuilding in Norfolk, Virginia, as detailed below.

25. NNSB, a subsidiary of HII, is a DOD Cleared Defense Contractor ("CDC") and is the largest military shipbuilding company in the U.S. HII is the sole company manufacturing the FORD Class U.S. Navy Aircraft Carrier, which is the U.S. Navy's newest generation of Aircraft Carrier. HII also manufactures and services U.S. Navy nuclear submarines, and various unmanned underwater vessels ("UUV"). NNSB is (and was on January 6, 2024) actively manufacturing Ford class carrier(s) as well as Virginia Class nuclear submarines, components of which are classified. NNSB is a commercial establishment engaged in the development and manufacturing of classified military naval arms for the United States Navy.

9

26. Additionally, NCIS confirmed with the NNSB security manager that on January 6, 2024, the Commissioned aircraft carriers - USS John C STENNIS; Commissioned submarines - USS Boise, USS Columbus, and USS Montana were located at NNSB when **SHI** operated his UAS. Naval aircraft carriers have classified and sensitive systems throughout the carriers. The nuclear submarines present on that date also have highly classified and sensitive Navy Nuclear Propulsion Information ("NNPI") and those submarines even in the design and construction phase are sensitive and classified.

27. As a result, the information made available to me makes clear that these locations are "commercial establishment[s] engaged in the development or manufacture of classified military or naval arms, munitions, equipment, designs, ships, aircraft, or vessels for the United States Army, Navy or Air Force." EO 10104.

28. A representative sample of the photos recovered from the SD card are produced below. Based on my review of the evidence and knowledge of the locations at issue, I recognize the night photos below as BAE and the third photo as NNSB/HHI. I have further confirmed the locations with global positioning system metadata from the SD card photos:







## CONCLUSION

29. Based upon the facts set forth above, I submit that probable case exists to believe **FENGYUN SHI**, has violated Title 49, United States Code, Sections 46306 & 46307 which prohibit the operation of unregistered UAS in violation of national defense airspace and Title 18, United States Code, Sections 795 & 796 which prohibit the photographing of defense installations and the use of aircraft for photographing defense installations.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
Sara Shalowitz
Special Agent
Federal Bureau of Investigation

This affidavit has been reviewed for legal sufficiency by Assistant United States Attorney Peter Osyf.

Reviewed: _____
Peter Osyf
Assistant United States Attorney

Subscribed and sworn to before me this **18th** day of January 2024, in the City of Norfolk, Virginia.

_____
The Honorable Robert J. Krask
UNITED STATES MAGISTRATE JUDGE