IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:24-mj-03 |
| | ) | |
| FENGYUN SHI, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING POSITION OF THE UNITED STATES

The United States by and through counsel, Assistant United States Attorney Peter G. Osyf, files this Position on Sentencing. For the reasons set forth *infra*, the United States recommends an appropriate sentence consistent with the high-end of the applicable advisory guidelines range. Specifically, the United States recommends a sentence of 6 months of imprisonment (6 months on Count Five to run concurrently with 6 months on Count Six).

**Statutory Considerations**

The defendant pleaded guilty on July 8, 2024, to Counts Five and Six of his Superseding Criminal Information. Both counts charged the defendant with Use of Aircraft for the Unlawful Photographing of Designated Installation without Authorization, in violation of 18 U.S.C. § 796 which carries a statutory maximum penalty of 12 months' incarceration. This Honorable Court may sentence the defendant to any term of imprisonment from 0 up to 2 years, (were the Court to impose consecutive sentences).

**Impact of the Plea Agreement**

The parties entered into a plea agreement and the United States acknowledges the defendant's acceptance of responsibility for the offense. Accordingly, the offense level is

1

decreased by two levels pursuant to U.S.S.G. § 3E1.1(a). Despite the defendant's timely notification of his intention to enter a plea of guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources efficiently, the defendant's offense level does not qualify him for an additional point reduction upon motion by the United States under U.S.S.G. § 3E1.1(b). Hence, no motion was made.

**Sentencing Guidelines Calculation**

The United States Probation Department prepared a presentence report, ("PSR"), which detailed the offense of conviction and the characteristics of the defendant. In calculating the offense level for the defendant, the probation office assigned a base offense level of 6 under U.S.S.G. § 2X5.2. A 2-point reduction to the base offense level was applied in accordance with U.S.S.G. §§ 4C1.1(a) and (b) because the defendant is a "Zero-Point Offneder." Applying the two-point reduction addressed above, the defendant's total adjusted offense level is 2.

The probation officer also calculated a criminal history level for the defendant. Because the defendant has no prior convictions, he received a total criminal history score of zero (0) which establishes a criminal history category of I pursuant to U.S.S.G. Chapter 5, Part A.

As a criminal history category I defendant with an offense level of 2, the defendant's sentencing guidelines range is 0 to 6 months. As noted in the PSR Addendum, the United States has no objections to the presentence report. ECF No. 32.

**Statutory Sentencing Factors under 18 U.S.C. § 3553(a)**

As outlined *supra*, the appropriate sentencing range under the guidelines with regard to defendant's offenses of conviction is 0 to 6 months. The United States submits that a review of the Section 3553(a) sentencing factors fully supports a term of imprisonment consistent with the high-end of the properly calculated advisory guidelines range here. Six months' imprisonment is sufficient but not greater than necessary to satisfy the goals of sentencing and is supported by the

sentencing factors.

    A.  Nature of the Offense

At the outset, the serious nature of this offense should weigh heavily on the Court's consideration. The United States has a drone problem. A simple Google search yields scores of results confirming the issue. From the 2018 *Time* magazine article titled "Experts Say Drones Pose a National Security Threat — and We Aren't Ready,"[1] to the cybersecurity guidance issued earlier this year by the Cybersecurity & Infrastructure Security Agency, ("CISA"), and the Federal Bureau of Investigation, ("FBI"), specifically addressing the threats posed by Chinese-manufactured drones in the United States,[2] it is evident that this legitimate concern has only grown over the past 6 years. A month after the CISA Warning, an article in *The Record* explained that the agency-issued guidance "follow[ed] a March [2023] appeal to CISA by a bipartisan group of senators, including Senate Intelligence Committee Chairman Mark Warner (D-VA), urging the agency to 'revisit its analysis of the security risks' posed by the use of Chinese-manufactured drones and make the results of that analysis public."[3] The article goes on to explain that, "The senators outlined how China's Shenzhen DJI Innovation Technology is already benefiting from the increasing use of consumer drones across the U.S., citing 2021 reporting from Reuters showing that DJI boasted almost 90% of the consumer market for drones in North America and over 70% of the industrial market." *Ibid*. DJI's drone manufacturing monopoly is public record, and it is widely recognized as the world's largest drone maker.

---

[1] By Hennigan, W.J. May 31, 2018. Available at: https://time.com/5295586/drones-threat/.

[2] *See* **Gov. Ex. 1,** hereafter referred to as "the CISA Warning."

[3] By Smalley, Suzanne. January 17, 2024. Available at: https://therecord.media/fbi-cisa-warn-of-drone-threat-china.

While the CISA Warning publicly sounded the alarm on the underlying threat to national security posed specifically by Chinese-manufactured drones – notably applicable here [4] – a joint statement issued by Senators Jack Reed (D-RI) and Roger Wicker (R-MS) on April 23, 2024, addressed the threat posed by drones generally.[5] The Senators' Statement cautions that "uncrewed aircraft systems, or UAS, [often referred to as drones,] pose multiple challenges: They have interfered with commercial flightpaths and crossed our southern border uncontested. Many have been identified flying over military bases and nuclear facilities, such as Langley Air Force Base in Virginia, Whiteman Air Force Base in Missouri and our test ranges in the western United States." *Ibid*. D-Fend Solutions, a leading global provider of counter-drone security solutions, referenced the Senators' Statement in its article titled, "The Rising Threat of Cheap and Small Commercial Drones to US and Allied Forces: A Call for Advanced C-UAS Systems."[6]

Among echoes of the Senators' Statement regarding the national security threats posed by drones generally, the Counter UAS Article refers to specific instances of drone incidents – one remarkably similar to the defendant's instant offense. In May 2024, "[a] drone flew undetected over the USS Ronald Reagan, a nuclear-powered aircraft carrier at the base. The incident, captured on video and shared on social media, exposed a vulnerability at the base and raised serious concerns regarding security at the base. The suspected operator, speculated to be a Chinese national, was never officially identified." *Ibid*. Underscoring the magnitude and prevalence of the problem, D-Fend Solutions offers an interactive "Drone Attack & Incident Tracker" with links to

---

[4] There is no dispute that the drone used by the defendant to perpetuate his offenses of conviction was a "Mini 3 Drone" manufactured by DJI.

[5] *See* **Gov. Ex. 2**, hereafter referred to as "the Senators' Statement."

[6] *See* **Gov. Ex. 3**, hereafter referred to as "the Counter UAS Article."

corresponding reports on their website available at: https://d-fendsolutions.com/drone-incident-tracker/.

There is no question these small commercial drones, *exactly* like the one used by the defendant – even when *not* being used illicitly – pose a significant problem currently being grappled with by the United States Senate. Worse here, defendant's expressly unlawful use of his drone is at the very heart of the problem. It is little surprise that the victim of the defendant's offenses of conviction, Newport News Shipbuilding, recognizes the serious nature of this case and asks the Court to weigh this factor heavily as well.[7]

Moreover, the specific facts of the defendant's conduct belie any innocent narrative. Specifically, the defendant purchased his new drone on January 3; he flew from San Francisco to Norfolk on January 4; he first flew his new drone a little before midnight on January 5 and took pictures of BAE Systems Shipbuilding and General Dynamics, NASSCO (and nothing else); he flew his drone in the rainy, cold[8] of January 6 and took pictures of Newport News Shipbuilding (and nothing else); he did not ask the Newport News Fire Department for help to retrieve his drone (as advised by the Newport News Police), but instead abandoned his drone and attempted to fly back to China after taking a train to Washington, D.C. for a brief stop of approximately 25 hours. PSR ¶ 9.

---

[7] *See* **Gov. Ex. 4**. Gov. Ex. 4 is a sworn statement by Joshua B. Quitaro, a Security Manager for Newport News Shipbuilding, ("NNS"). Mr. Quitaro authored the statement, and it has been approved by NNS. Mr. Quitaro will be present for the defendant's sentencing on October sentence and will provide an executed copy of Gov. Ex. 4 to the Court at that time.

[8] Weather history for Newport News around the time of the defendant's drone flight is recorded as approximately 46 degrees F and "Light Rain." *See* https://www.wunderground.com/history/daily/us/va/newport-news/KPHF/date/2024-1-6.

B. History and Characteristics of the Defendant

Perhaps unsurprisingly, we know very little about the defendant beyond the fact that he is a healthy, well-educated, 26-year-old man from Changzhou, China. PSR ¶¶ 30-41. Very surprisingly however, defendant's mother and father – according to the defendant – who teaches simplified Chinese to adults and is a "street manager," respectively, manage to pay for the defendant's pursuit of a master's degree in agricultural engineering, pay off his credit cards monthly, and provide the defendant with a monthly allowance of $4,000. PSR ¶¶ 31, 44-45. As mentioned above, the defendant has no criminal history.

Remarkably, the defendant's history and characteristics are nearly identical to those of two young men from China similarly convicted in 2020 in the Southern District of Florida. *See United States v. Yuhao Wang*, et al., No. 4:20-cr-10005-KMM, ECF No. 22, 47, 48, 62, and 79, (S.D. Fla. 2020). Unfortunately, an analysis of what little the United States knew of these two men and knows of the defendant, only gives rise to more questions than it does provide any answers or explanations.

C. Need for Just Punishment

As the full extent of the defendant's intention and culpability will likely never be known, divining a proportionally just punishment is difficult. But given the extreme threat to national security posed by even a strict-scrutiny analysis of his conduct, there is a need for *some* punishment of the defendant here, especially considering that but for the defendant's drone fortuitously getting stuck in a tree, his crimes would have gone completely *un*punished.

D. Deterrence

The two types of deterrence at issue are general and specific. On the issue of general deterrence, the public must have confidence that the activities of the defendant are treated with the utmost seriousness. The public must look at the actions of the defendant; using a drone to

unlawfully photograph a restricted location without prior authorization, and know that such conduct commands a significant consequence. The value of life, of crime free communities, and of societal stability are expressed in the sentence assigned to the defendant. Those inclined to consider committing crimes like those of the defendant *must* be made to pause and think of the consequences that follow. Second only to the serious nature and circumstances of the offense, general deterrence is critically important here. With the ever-growing threats posed by drone use and woefully lacking countermeasures to proactively prohibit such uses, we must ensure that individuals are deterred in the first instance.

Given the likelihood of the defendant's removal from the United States, specific deterrence is largely irrelevant here. However, the United States of course hopes that whatever sentence this Honorable Court imposes will serve to specifically deter the defendant from *any* future criminal conduct in the future.

E. Need to Protect Society

A thriving society relies upon the safety, security, and freedom provided by its government and military as well as a general respect for the Rule of Law and the enforcement thereof. The defendant's conduct here potentially threatens all of those critical aspects of society and must be considered accordingly.

F. Avoiding Sentencing Disparities

The United States' recommendation of 6 months would not create any unwarranted sentencing disparities here. However, a sentence *below* 6 months arguably would. As referenced above, the Southern District of Florida case of *United States v. Yuhao Wang*, et al. provides the most similar and contemporaneous comparator for analysis.

Yuhao Wang and Jielun Zhang, both Chinese nationals in the United States as students, were charged with 6 counts of the unlawful photographing of a designated installation without authorization, in violation of 18 U.S.C. § 795, and 1 count of unlawfully entering a military, naval, or Coast Guard property, in violation of 18 U.S.C. § 1382. *United States v. Yuhao Wang*, et al., No. 4:20-cr-10005-KMM, ECF No. 22, (S.D. Fla. 2020). Both Wang and Zhang, pleaded guilty to 1 count of violating 18 U.S.C. § 795 (Count 3). *Wang*, ECF Nos. 45 and 46, respectively. Both defendants' guidelines ranges were 0 to 6 months but the United States – referencing another similar case, *United States vs. Zhao Qianli*, No. 4:18-cr-10035-KMM (S.D. Fla. 2018) in which the defendant received an upward varied sentence of 12 months – recommended upward variances for both, 9 months for Wang and 12 months for Zhang. *Wang*, ECF No. 60.

On June 24, 2020, the district court for the Southern District of Florida varied upward and sentenced Wang and Zhang as recommended by the United States. *Wang*, ECF No. 79.[9] It is evident from the Sentencing Transcript that many of the questions raised by the facts and circumstances in this case, were also raised by the facts and circumstances of *Wang*. *Ibid*. While Wang's and Zhang's physical intrusion of the military installation is a significantly distinguishing fact from the defendant's offense, the more sophisticated and clandestine manner of using a drone to accomplish the same result is arguably even more problematic. However, given that we are left with more questions than answers here and that the true intents behind all three of these defendants' actions are not crystal clear, the fact that Wang and Zhang blatantly and expressly ignored numerous signs and warnings that their conduct was prohibited *could* be what warranted the upward sentencing variances in their case. While an upward variance *may* not be warranted here, a sentence at the high-end of the defendant's guidelines range certainly is and anything less than

---

[9] *See* **Gov. Ex. 5**, hereafter referred to as "the Sentencing Transcript".

6 months would create an unwarranted sentencing disparity.

## Conclusion

For these reasons, the United States respectfully recommends a term of imprisonment consistent with the high-end of the properly calculated advisory guidelines range. Six months' imprisonment is sufficient but not greater than necessary to satisfy the goals of sentencing here and is supported by the 3553(a) sentencing factors.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:       */s/*
Peter G. Osyf
Assistant United States Attorney
Virginia State Bar No. 86597
Office of the United States Attorney
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax (757) 591-0866
Peter.Osyf@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September 2024, I filed a copy of the foregoing with the Clerk of Court via CM/ECF, which will send a notification to all counsel of record.

/s/
Peter G. Osyf
Assistant United States Attorney