**GOVERNMENT EXHIBIT 5**

```
                   UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF FLORIDA
                   CASE NO. 20-CR-1005-KMM-1
                   CASE NO. 20-CR-1005-KMM-2

UNITED STATES OF AMERICA,         )   Page 1-20
                                  )
           vs.                    )
                                  )   Key West, Florida
YUHAO WANG and JIELUN ZHANG,      )   June 4, 2020
                                  )   2:00 P.M.
           Defendants.            )
```

TRANSCRIPT OF SENTENCING
BEFORE THE HONORABLE KEVIN M. MOORE
U. S. DISTRICT JUDGE

APPEARANCES:

For the Government:     JONATHAN KOBRINSKI - via Zoom
                        United States Attorney's Office
                        99 NE 4th Street
                        Miami, Florida 33128

For the Defendant Wang: JUAN MICHELEN
                        Assistant Federal Public Defender
                        One East Broward Boulevard
                        Suite 1100
                        Fort Lauderdale, Florida 33301

For the Defendant Zhang: HECTOR FLORES
                         Barzee Flores, P.A.
                         Courthouse Center, Penthouse 1
                         40 NW Third Street
                         Miami, Florida 33128

Reported by:            VERNITA ALLEN-WILLIAMS
Vernita_Allen-Williams  Official Court Reporter
@flsd.uscourts.gov      United, States District Court
                        400 North Miami Avenue
                        Miami, Florida 33128

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1              THE COURT:  All right.  This is United States of
 2   America vs. Yuhao Wang and Jielun Zhang.
 3              Counsel, note your appearances.
 4              MR. KOBRINSKI:  Jonathan Kobrinski on behalf of the
 5   United States.
 6              MR. MICHELEN:  And good afternoon, Your Honor.
 7   Juan Michelen, Assistant Federal Defender, on behalf of
 8   Mr. Lyuyou Wang.
 9              MR. FLORES:  Good afternoon, Your Honor.  Hector
10   Flores, appointed on behalf of Jielun Zhang.
11              THE COURT:  Good afternoon to you all.  And, Mr.
12   Zhang, can you hear me?
13              DEFENDANT WANG:  Yes.
14              THE COURT:  And, Mr. Wang, can you hear me?
15              MR. MICHELEN:  Sorry, Your Honor.  That was Mr.
16   Wang.
17              THE COURT:  Okay.
18              MR. MICHELEN:  The first one who answered was Mr.
19   Wang.
20              THE COURT:  Mr. Zhang, can you hear me?
21              DEFENDANT ZHANG:  Yes.
22              THE COURT:  Okay.  Mr. Zhang, I have in front of me
23   a document that's styled waiver of physical presence in court
24   and consent to appear by video or teleconference under the
25   CARES Act.
```

```
 1              Have you had an opportunity to go over that
 2   document with your lawyer?
 3              DEFENDANT ZHANG:  Yes.
 4              THE COURT:  And you signed it today?
 5              DEFENDANT ZHANG:  Yes.
 6              THE COURT:  And the boxes that are checked reflect
 7   that you waive your right to be present in person in the
 8   courtroom at sentencing, and that you consent to appear by
 9   video teleconferencing; is that correct?
10              DEFENDANT ZHANG:  Yes.
11              THE COURT:  Okay.  I'll go ahead and sign and date
12   the document for today, and find that under the CARES Act
13   that it's necessary to conduct these proceedings by video
14   conferencing, given the virus or the pandemic and the
15   defendant's consent.
16              And, Mr. Wang, likewise, I have a document in front
17   of me for you as well.
18              Did you have an opportunity to discuss this
19   document with your lawyer?
20              DEFENDANT WANG:  Yes.
21              THE COURT:  And you signed it?
22              DEFENDANT WANG:  Yes.
23              THE COURT:  And in that document you checked that
24   you waived your right to be present in person in the
25   courtroom for the sentencing hearing and that you consent to
```

```
 1  appear by video teleconferencing; is that correct?
 2       DEFENDANT WANG:  Yes.
 3       THE COURT:  So I'll go ahead and likewise sign and
 4  date this with today's date, June 4, 2020; and find that it
 5  was necessary to conduct these proceedings by way of video
 6  conference pursuant to the CARES Act, given the virus, and
 7  that this was the most reasonable method of conducting the
 8  sentencing hearing.
 9       Okay.  Let's next take up the presentence
10  investigation reports.  Any objections to the reports?
11       MR. MICHELEN:  None on behalf of Mr. Wang, Your
12  Honor.
13       MR. FLORES:  Nor on behalf of Mr. Zhang, Your
14  Honor.
15       THE COURT:  Okay.  And the probation office has
16  calculated an offense level of 4, with a criminal history
17  category I.  And the guideline range is zero to six months;
18  is that correct?
19       MR. MICHELEN:  Yes, Your Honor.
20       MR. FLORES:  Yes, Your Honor.
21       THE COURT:  Okay.  Mr. Zhang, do you want to say
22  anything on your own behalf before sentence is imposed?
23       DEFENDANT ZHANG:  No.
24       THE COURT:  Mr. Wang, do you want to say anything
25  on your own behalf before sentence is imposed?
```

```
 1              DEFENDANT WANG:  Yes.
 2              THE COURT:  Go ahead.
 3              DEFENDANT WANG:  Respectfully, Judge, first of all,
 4     I want to sincerely apologize for the mistakes that I have
 5     made.  I'm an only child in my family, and my parents
 6     have high price -- paid a high price for me to come here to
 7     study.
 8              However, I have made mistake, trouble, and my
 9     parents have been worrying about me.  They can barely sleep.
10     Day and night they worry about me.
11              I miss them so, so much.  I hope that I can go back
12     to them soon and I can make up this for them.  Thank you very
13     much.
14              THE COURT:  Thank you.  Anything on behalf of
15     either defendant?
16              MR. MICHELEN:  Your Honor, I would like to make a
17     few arguments on behalf of Mr. Wang.
18              THE COURT:  Okay.
19              MR. MICHELEN:  Your Honor, we filed a sentencing
20     memo.  I won't rehash everything that's in there.
21              In the memorandum I go into his background, who he
22     is.  I provided the Court with letters of support, not just
23     from his mom, but from classmates from the University of
24     Michigan, professors.  I provided the Court with his personal
25     statement when he was applying to the University of Michigan.
```

1    And I think all those things -- his transcripts
2    from all of his universities, all of those things, Your
3    Honor, really I think speak to who he is and the kind of kid
4    that he is. What I want to focus now, Your Honor, on is what
5    he's done since his arrest, Judge.
6         The moment he was arrested on January 4th, he gave
7    multiple interviews to both the Key West Police Department,
8    the FBI, obviously, Monroe Sheriff's office. Every time he
9    was asked questions on January 4th before his arrest, he
10   fully cooperated and answered every question they wanted. He
11   gave them all access to all of his phones, every computer he
12   had on him on that day.
13        Since the arrest, he has given multiple interviews,
14   answered every question they've asked -- the FBI has asked of
15   him. He has given, Your Honor, consent to search every
16   electronic device. He gave consent to search his apartment.
17   He gave consent to search both his University of Michigan
18   account, personal account, gave them passwords. He has given
19   consent to search everything. He's given, again, multiple
20   interviews.
21        And, Judge, after the six-month investigation, the
22   government agrees that he is not deserving of a maximum
23   sentence.
24        Judge, there is this idea of relative punishment
25   compared to other cases, Your Honor; and I cited a few of

1  them in the memo.
2          But just -- Judge, the woman who was arrested in
3  Mar-a-Lago last year, she went to trial. She never accepted
4  anything. To the moment after she was convicted, at her
5  sentencing, did not accept a thing. She was facing six years
6  in prison. She got eight months, Your Honor. Obviously, it
7  wasn't the exact same charges, but it was still trespassing
8  on restricted property; Mar-a-Lago itself.
9          She lied to federal agents. She lied to the Secret
10 Service, she became verbally aggressive with them, and still
11 eight months.
12         The case before Your Honor that Your Honor
13 mentioned at the last sentencing last year, in that case, if
14 I remember correctly, Zhao Qianli, he was circumnavigating
15 perimeter fences. This is a case, Your Honor, where they
16 drove up to a guardhouse and provided ID, Chinese ID, and at
17 no point was there any attempt by Lyuyou to conceal himself
18 or to hide or to deceive anyone.
19         And I also mentioned in the memo, Your Honor, a
20 2008 case where two Chinese nationals arrested at San
21 Francisco International Airport with technology and disks and
22 microchips stolen from an American company, and they admitted
23 that they stole it to benefit the Peoples Republic of China.
24 This wasn't the government assuming that; they confessed to
25 that. They got charged with economic espionage. They got

```
 1   12 months and a day.
 2           So, Your Honor, if we're going to think about
 3   relative punishment, Lyuyou has done everything he's been
 4   asked to do.  And after the government's investigation,
 5   they've concluded, Your Honor, that he does not deserve the
 6   maximum sentence.
 7           We are asking you for a six-month sentence, which
 8   would mean he would be in custody for about another month.
 9           Judge, aside from everything I've just mentioned,
10   we do have this coronavirus situation.  And if the idea is to
11   try to reduce the prison population of one possible, right --
12   because not everyone can be released, I know while all my
13   clients would love to be released, not every judge -- not
14   every case, every client can be released.  This is the kind
15   of a case where this is a misdemeanor, Your Honor, and we
16   have the government agreeing that he doesn't deserve the
17   maximum sentence.
18           He's already sick.  He's already lost weight since
19   he's been at the Monroe County Jail.  And I hate to be so
20   descriptive, but he's had -- and this has been reported since
21   his arrest -- blood in his stool, and he still has blood in
22   his stool.  They've had to do a colonoscopy on him at Monroe
23   County Jail.  He's not -- his stomach is not handling well
24   everything that's going on.
25           So we have someone who is already not doing great
```

1  in terms of health, someone who -- no matter what this Court
2  sentences him to -- is going to have to at some point go into
3  immigration custody for however short of a period. We hope
4  that signing these removal orders, these consents, reduces
5  that time. But we don't really know how much it's going to
6  reduce. And he's going to probably have to go in there at
7  some point.
8      He's one credit shy of graduating with his master's
9  degree, Judge; one credit. And his parents are paying for
10 his tuition out of pocket, and that's all now out the window.
11 I've been speaking with the general counsel at the University
12 of Michigan. They are open to him potentially finishing that
13 last credit online so that he can at some point get his
14 master's from the University of Michigan, but we don't know.
15      So, Judge, based on all of that, we're asking the
16 Court for a six-month sentence. Lyuyou's case, his actions,
17 his conduct before and since is distinguishable from all
18 those other cases that we cited, and that's why we're asking
19 Your Honor for a six-month sentence.
20      THE COURT: Let me ask you: What do you make of
21 the frequency of these cases in this relatively short period
22 of time of individuals all attempting to engage in the same
23 kind of conduct, all of the same nationality? Do you think
24 it's just a coincidence?
25      MR. MICHELEN: Your Honor, I don't know enough to

1  be fair.  I don't know everything the FBI knows; but I can
2  read articles, and I do see that this is not the only case
3  where there's Chinese Nationals getting arrested.
4          What I can tell you, Your Honor, is I've seen the
5  pictures.  And like Mr. Rashbaum mentioned in his case, these
6  pictures are not anything that can't be found online.
7          Now what I can tell you about Yuhao is -- the
8  elephant in the room is:  Are these guys spies?  Judge, it
9  doesn't make any sense.  And I've met him.  The FBI has met
10 with him multiple times.  If they thought he was a spy, why
11 would the government not ask for the maximum sentence, which
12 is the year?  So I definitely don't think Yuhao Wang is a
13 spy.
14         I don't think it makes any sense.  He was one
15 credit shy.  I mean, Judge, here's the way I see it.  Let's
16 say the Chinese government is sending young Chinese students
17 to America to spy.  I'm sure it's happened; right?  They're
18 going to give him a University of Michigan education, have
19 him be one credit shy of graduating, and then say:  Go
20 potentially blow your cover driving up to a guardhouse and
21 showing your Chinese ID.  And there goes the entire, you
22 know, Peoples Republic of China's investment into this spy,
23 when he's one credit shy of having his computer engineering
24 degree.  They could have just waited a few more months, he
25 would have had a degree, done some spy work, and go back to

```
 1  China with a degree.
 2          So whether or not I think it's a coincidence, it's
 3  very weird to me.  I understand why it's weird.  I'm sure
 4  there are a lot of cases where people are sent to bases.  But
 5  in this case, it just doesn't make any sense to waste an
 6  engineering degree from a great school, be one credit shy,
 7  and say:  Go blow your cover on this dumb mission -- right --
 8  where you're going to just drive up to a guardhouse.  It's
 9  weird.
10          I understand the concern.  I understand why the FBI
11  would be concerned.  I understand why anyone would be
12  concerned, but it doesn't make any sense to me.  And then you
13  look at, you know, if --
14          Judge, if they're spies, they're not going to be
15  sitting with the FBI for multiple, multiple, multiple
16  debriefs, giving consent to read everything and search
17  everything and look at everything.  They're the worst spies
18  in the world.  And they searched every single electronic,
19  Your Honor, everything.  Consent to search the apartment,
20  e-mail accounts, everything.
21          So I understand, Judge, I really do.  I've read the
22  articles and:  Why does this keep happening?  But this case,
23  they drove up to a guardhouse.
24          And there's nothing on Yuhao.  I can only speak to
25  Yuhao because I don't know what was on anyone else's
```

1 possessions. But as far as I know, there was nothing on
2 anybody's phone, computer, any kind of device. And it just
3 seems like the most inefficient spy work that would have
4 happened because, again, it's clear they are very smart kids,
5 clearly. They're at University of Michigan getting
6 math-science degrees. They're not liberal arts studies.
7 Right? And what a waste it is to have this kid come over
8 here, get a great education, and be one credit shy and say:
9 Go blow your cover off. For what? Right? To drive up to a
10 guardhouse and drive around.
11     And the pictures show shoreline, they show the
12 other island -- Fleming Key, I believe -- in the background.
13 I understand it's an important secure island; I get that.
14 You can see buildings in the background, Judge. You can see
15 the same thing you can see on Google Earth.
16     So whether it's a coincidence, I don't know. I
17 understand the question. It is weird. But what I can tell
18 you is: What a waste of a spy, if that's what happened here,
19 Judge. One credit shy. Why would they blow that? It just
20 doesn't make any sense.
21     THE COURT: Thank you. Mr. Flores.
22     MR. FLORES: Your Honor, almost everything that Mr.
23 Michelen said about Mr. Wang is applicable to Mr. Zhang.
24 Like Mr. Wang, Mr. Zhang's parents are financing his
25 education. He's earning a master's degree in architecture at

1  a prestigious school, the University of Michigan. We
2  submitted letters of character reference from professors and
3  colleagues at the school. He's well liked. He's a respected
4  and talented architecture student, who can basically kiss all
5  of that goodbye because of this stupid mistake that they
6  made.
7          I agree with Your Honor that it looks weird, you
8  know. What are these Chinese guys doing going on military
9  bases? But since the Sigsbee Annex is more of an R&R -- a
10 rest and relaxation and housing base, rather than what we
11 think of when we think of military bases. I mean if they
12 wanted to take pictures of military assets, you could park on
13 the overpass near Boca Chica's Airbase and take pictures of
14 the jets as they're flying by. I mean this was an RV park.
15         And I know there were antennas on the base, but
16 this was different than the Truman Annex where Qianli -- the
17 man that Your Honor sentenced in '18, 2018 -- jumped the
18 perimeter fence. And I think Mr. Qianli also jumped the
19 perimeter fence and immediately sent off images to China.
20 These guys didn't send off images anywhere. They didn't send
21 the images anywhere -- they were all on there -- even though
22 they had the opportunity to.
23         Mr. Michelen talked about all of the consents. Mr.
24 Zhang consented to search of all of his electronics, to
25 search of his car in Michigan, search of his apartment in

1   Michigan, search of his e-mail addresses, search of every
2   single item that the government wanted.
3       He debriefed with the government and expressed his
4   remorse three different times with them.  The government has
5   hundreds of thousands of e-mails and texts and social media
6   posts, and there's nothing that they can point to that would
7   support the conclusion that they're spies.
8       I think what they did raises the suspicion that
9   they're spies; but all of the best possible evidence of them
10  being spies would have been found in their electronics, and
11  there was none of that.
12      He's also waived his right to appeal, his right to
13  appeal the sentence.  He's waived his right to challenge the
14  immigration process.  He's accepted responsibility and
15  expressed remorse multiple times in the debriefings, and so I
16  believe that society would be best served in this matter by a
17  sentence of time served.
18      THE COURT:  Thank you.  Mr. Kobrinski.
19      MR. KOBRINSKI:  Your Honor, I filed a sentencing
20  memorandum where I outlined the government's position that
21  Mr. Zhang should be sentenced to the maximum 12 months, and
22  that Mr. Wang should be sentenced to 9 months.
23      I appreciate Mr. Michelen's arguments on behalf of
24  his client that it should be 6 months.  I think it's
25  reasonable that he's asking at the high end of the guidelines

1  rather than time served.  But I think that to achieve general
2  deterrence and to promote respect for the law and to reflect
3  that Mr. Wang was relatively less culpable, an upward
4  variance is appropriate; just not as much as what Mr. Zhang
5  should be sentenced to in the government's position.
6         Now, I take issue with the characterizations that
7  have been made of the values of the availability of what they
8  photographed in its native format in terms of the quality of
9  the images as they existed on the individual devices compared
10 to what's available either on Google Earth or by pulling over
11 on the side of the road outside of an installation.  I don't
12 think that those are accurate arguments, and also it
13 effectively doesn't offer respect for the law with the idea
14 of:  Well, we didn't take good pictures; so, therefore, don't
15 punish us harshly.  I think the characterization is actually
16 wrong, and there's other reasons that these individuals would
17 be wanting to be on the installation as they're taking the
18 photographs.  And ultimately it's not for them to decide
19 whether they should be taking photographs.
20         And to reflect respect for the law and to achieve
21 general deterrence, the government submits an upward variance
22 is appropriate, Your Honor.
23         THE COURT:  Thank you.  Anything further?
24         MR. MICHELEN:  Nothing on behalf of Mr. Wang, Your
25 Honor.

```
 1              MR. FLORES:  No, Your Honor.
 2              THE COURT:  Okay.  With respect to Mr. Zhang, the
 3   Court's considered the statements of all parties, the
 4   presentence report which contains the advisory guidelines,
 5   and the statutory factors as set forth in Title 18, United
 6   States Code, Section 3553(a).
 7              It is the finding of the Court the defendant is not
 8   able to pay a fine.
 9              It is the judgment of the Court that the defendant,
10   Jielun Zhang, is committed to the Bureau of Prisons to be
11   imprisoned for a term of 12 months as to Count 3.
12              Upon release from imprisonment, the defendant shall
13   be placed on supervised release for a term of one year as to
14   Count 3.
15              Within 72 hours of release from the custody of the
16   Bureau of Prisons, the defendant shall report in person to
17   the probation office in the district to which the defendant
18   is released.
19              While on supervised release, the defendant shall
20   comply with the mandatory and standard conditions of
21   supervised release, which include not committing any crimes,
22   being prohibited from possessing a firearm or other dangerous
23   device, not unlawfully possessing a controlled substance, and
24   cooperating in the collection of DNA.
25              The defendant shall also comply with the following
```

```
 1   special conditions:
 2              Surrendering to Immigration for removal after
 3   imprisonment and unpaid restitution, fines, or special
 4   assessments as noted in Part F of the presentence report.
 5              It is further ordered, that the defendant shall pay
 6   immediately to the United States a special assessment of $25
 7   as to Count 3.
 8              Now that sentence has been imposed, does the
 9   defendant or his counsel object to the Court's finding of
10   fact and the manner in which sentence was pronounced?
11              MR. FLORES:  Your Honor, we object to an above
12   guideline sentence.
13              THE COURT:  Mr. Zhang, do you understand you have a
14   right to -- you said there was an appeal waiver?
15              MR. FLORES:  Yes, Your Honor.
16              THE COURT:  Okay.  With respect to Mr. Wang, the
17   Court has considered the statements of all parties, the
18   presentence report which contains the advisory guidelines,
19   and the statutory factors as set forth in Title 18, United
20   States Code, Section 3553(a).
21              It is the finding of the Court that the defendant
22   is not able to pay a fine.
23              It is the judgment of the Court that the defendant,
24   Yuhao Wang, is committed to the Bureau of Prisons to be
25   imprisoned for 9 months as to Count 3.
```

```
 1            Upon release from imprisonment, the defendant shall
 2   be placed on supervised release for a term of one year as to
 3   Count 3.
 4            Within 72 hours of release from the custody of the
 5   Bureau of Prisons, the defendant shall report in person to
 6   the probation office in the district to which the defendant
 7   is released.
 8            While on supervised release, the defendant shall
 9   comply with the mandatory and standard conditions of
10   supervised release, which include not committing any crimes,
11   being prohibited from possessing a firearm or other dangerous
12   device, not unlawfully possessing a controlled substance, and
13   cooperating in the collection of DNA.
14            The defendant shall also comply with the following
15   special conditions:
16            Surrendering to Immigration for removal after
17   imprisonment and unpaid restitution, fines, or special
18   assessments as noted in Part F of the presentence report.
19            It is further ordered that the defendant shall pay
20   immediately to the United States a special assessment of $25
21   as to Count 3.
22            Now that sentence has been imposed, does the
23   defendant or his counsel object to the Court's finding of
24   fact or to the manner in which sentence was pronounced?
25            MR. MICHELEN:  No, Your Honor.
```

```
 1                THE COURT:  Was there an appellate waiver?
 2                MR. MICHELEN:  Yes, Your Honor.
 3                THE COURT:  Okay.  So that takes care of the
 4   sentencings.
 5                They both have these judicial orders of removal;
 6   right?
 7                MR. FLORES:  Yes, Your Honor.
 8                MR. MICHELEN:  Yes, Judge.
 9                MR. KOBRINSKI:  Your Honor, the government moves to
10   dismiss the remaining counts of these defendants at this time
11   also.
12                THE COURT:  That will be granted.
13                Mr. Zhang and Mr. Wang, I have statements from each
14   of you in which you request a judicial order of removal.
15                Do each of you request today that an order be
16   issued by this Court for your removal to the Peoples Republic
17   of China?
18                DEFENDANT ZHANG:  Yes.
19                DEFENDANT WANG:  Yes.
20                THE COURT:  And do each of you agree to accept a
21   written order of removal as a final disposition of any
22   immigration proceedings and waive any and all rights to
23   challenge any provision of this agreement in any United
24   States or foreign court or tribunal?
25                DEFENDANT ZHANG:  Yes.
```

```
 1              DEFENDANT WANG:  Yes.
 2              THE COURT:  Okay.  Anything further?
 3              MR. MICHELEN:  Your Honor, I would just ask on
 4   behalf of Mr. Wang if the Court would consider recommending
 5   to the BOP to designate Miami, where he'll serve the
 6   remainder of his sentence.
 7              THE COURT:  We'll include that in the judgment of
 8   commitment.
 9              MR. MICHELEN:  Thank you, Judge.
10              MR. FLORES:  And likewise for Mr. Zhang.
11              THE COURT:  I'll include that in his as well.
12              MR. KOBRINSKI:  Nothing from the government.
13              THE COURT:  That concludes these proceedings.
14              MR. MICHELEN:  Thank you, Your Honor.
15              THE COURT:  Again, I apologize for you having to
16   wait for as long as you did.
17              MR. KOBRINSKI:  Thank you for allowing me to
18   participate remotely, Your Honor.
19              THE COURT:  All right.
20                          CERTIFICATE
21     I certify that the foregoing is a correct transcript
22   from the record of proceedings, noting the government
23   appearing via Zoom, to the best of my ability.
24
25   June 24, 2020              /s/ Vernita Allen-Williams
```